UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| MCKINNLEY EXCAVATING, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No.: 1:21-CV-69-KAC-SKL |
| | ) |
| C&C CONTRACTORS, LLC, et al., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER STAYING AND ADMINISTRATIVELY CLOSING THE CASE

This matter is before the Court on Defendants' "Motion to Stay and Compel Arbitration" [Doc. 12]. Defendants move the Court to (1) "compel Plaintiff to arbitrate all disputes" against Defendant C&C Contractors, LLC ("C&C") and (2) "stay Plaintiff's claims against [Defendant] Hartford [Fire Insurance Company ("Hartford")], including all discovery, pending the outcome of the arbitration between Plaintiff and C&C" [Doc. 12 at 2]. As relevant here, Plaintiff sued Defendants to collect on a Payment Bond—issued to C&C by Hartford as surety—under the Miller Act, 40 U.S.C. § 3133 [*See* Doc. 1]. Plaintiff's claims relate to a subcontract Plaintiff and C&C entered for "the Chattanooga National Cemetery Gravesite Expansion Project" owned by the Department of Veterans Affairs [*See* Docs. 1 at 2, 7-9, 1-1 at 1, 18]. The subcontract contained a dispute resolution provision requiring the arbitration of "all claims" of Plaintiff [Doc. 1-1 at 14-15]. Plaintiff and C&C agree to arbitrate in accordance with the subcontract, but Plaintiff opposes staying the proceedings against Hartford because Hartford "was never party to the subcontract" [Doc. 17 at 1]. In support of the stay of the entire action, Defendants assert that arbitration "will be determinative of the claims brought by Plaintiff against Hartford" because Hartford, as surety to the Payment Bond, "is only liable if C&C is liable to Plaintiff" [Docs. 12 at 6-7, 20 at 3-4].

The Federal Arbitration Act ("FAA") compels the arbitration of this dispute between Plaintiff and C&C. Section 2 of the FAA specifically provides that a provision in a contract "involving commerce" agreeing "to settle by arbitration a controversy thereafter arising out of such contract" "shall be valid, irrevocable, and enforceable" unless otherwise unenforceable "at law or in equity." 9 U.S.C. § 2. The FAA expresses "a liberal federal policy favoring arbitration agreements." *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1621 (2018) (internal citations omitted). Faced with a motion to compel arbitration and stay proceedings, a court must determine (1) "whether the parties agreed to arbitrate;" (2) "the scope of that agreement;" (3) "if federal statutory claims are asserted, . . . whether Congress intended those claims to be nonarbitrable;" and (4) "whether to stay the remainder of the proceedings" if some, but not all, of the claims are subject to arbitration. *McGee v. Armstrong*, 941 F.3d 859, 865 (6th Cir. 2019) (quoting *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000)).

Here, the Parties agree that the dispute between Plaintiff and C&C is subject to arbitration [*See* Docs. 17, 20]. Plaintiff and C&C entered into a valid agreement to arbitrate, and the dispute is within the scope of that agreement. On June 13, 2019, Plaintiff and C&C signed the subcontract, which included an arbitration clause [Doc. 1-1 at 1, 14-15]. Article 29.1 of the subcontract provides that Plaintiff and C&C "intend that all claims of [Plaintiff] shall be resolved in accordance with the provisions of the Contract Documents and this Subcontract" [*Id.* at 15]. And Article 29.4 provides that "any claims of [Plaintiff] that cannot be resolved in accordance with the provisions of the Contract Documents or the Subcontract[] shall be finally determined by binding arbitration in accordance with the current Construction Industry Rules of the American Arbitration Association," noting that Plaintiff and C&C agree that "this Subcontract evidences a transaction involving interstate commerce and that this agreement to arbitrate is enforceable under 9 U.S.C. 1,

2

*et seq*" [*Id.* at 15]. Plaintiff and C&C agree that the latter clause applies to this case [*See* Docs. 12, 17]. The Court sees no basis to question their consent or the validity of the arbitration agreement itself.[1] Further, Plaintiff and C&C's current dispute falls within the scope of their arbitration agreement.

Having concluded that the FAA compels the arbitration of the dispute between Plaintiff and C&C, the Court must determine the appropriate procedural next step for this action. Under the FAA, the Court "shall on the application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement" if it is "satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement." 9 U.S.C. § 3. This language of the FAA "conveys a mandatory obligation" that "a district court should enter a stay in the normal course." *Arabian Motors Grp. W.L.L. v. Ford Motor Co.*, 19 F.4th 938, 941-42 (6th Cir. 2021). But the Sixth Circuit has not conclusively addressed this Court's obligation where, as here, a portion of an action is subject to arbitration but other claims remain. *Id.* at 942 ("As this statutory landscape reveals, a district court should enter a stay in the normal course in this setting. But does that mean it always must do so? We need not decide."). Here, a

---

[1] Plaintiff "disputes that the subcontract's choice of law provision, which attempts to establish Alabama law as the governing law for any arbitration, is enforceable" under Tennessee law and requests that the Court "strike the unenforceable choice of law provision in the subcontract" [Doc. 17 at 1, 8]. But the validity of the choice-of-law provision is not properly before the Court [*See* Doc. 12]. Indeed, the subcontract's choice-of-law provision is within a separate article than the subcontract's arbitration provision [*See* Doc. 1-1 at 14-15, 16]. The choice-of-law provision does not bear on the Parties' agreement to arbitrate. *See Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445-46 (2006) ("[U]nless the challenge is the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance."); *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 64 (1995) ("[T]he choice-of-law provision covers the rights and duties of the parties, while the arbitration clause covers arbitration."). Thus, the Court declines to construe this provision of the subcontract, which the arbitrator will address in the first instance.

stay of the entire action is appropriate. Arbitration proceedings would bind Hartford—as surety to the Payment Bond—even though Hartford may not be a party to those proceedings. *See United States ex rel. Skip Kirchdorfer, Inc. v. M.J. Kelley Corp.*, 995 F.2d 656, 661 (6th Cir. 1993) (noting that a surety with constructive notice of an arbitration proceeding under the Miller Act could not thereafter avoid liability). Because Hartford's obligations in this case rise and fall with those of C&C, Plaintiff's claims against Hartford are part and parcel of the larger adjudication of Plaintiff's claims against C&C. Good-faith arbitration—combined with frequent joint status reports from the arbitrating parties—will preserve Plaintiff's rights against Hartford and lead to prompt, efficient adjudication of Plaintiff's claims against Hartford.

Accordingly, the Court **GRANTS** Defendants' "Motion to Stay and Compel Arbitration" [Doc. 12]. The Court **ORDERS** Plaintiff and C&C to arbitrate their dispute, and the Court **STAYS** this action pending the conclusion of arbitration. Within fourteen (14) days of the conclusion of arbitration, Plaintiff and C&C **SHALL NOTIFY** the Court of the outcome of the proceedings. Additionally, to ensure that arbitration begins promptly, the Court **ORDERS** Plaintiff and C&C to file a status report within six (6) months of the date of this Order and at three-month (3-month) intervals thereafter until the arbitration proceedings conclude. The Court **DIRECTS** the Clerk to administratively close this case.

IT IS SO ORDERED.

KATHERINE A. CRYTZER
United States District Judge